# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| OMARI H. PATTON, | ) |
|             Plaintiff, | ) Civil Action No. 12 – 247J |
| v. | ) District Judge Kim R. Gibson |
| | ) Chief Magistrate Judge Lisa Pupo Lenihan |
| ROBERT WERLINGER and BRYCE BURGETT, | ) |
|             Defendants. | ) |

## REPORT AND RECOMMENDATION

**I.  RECOMMENDATION**

For the reasons that follow, it is respectfully recommended that Defendants' Motion to Dismiss or, in the alternative, Motion for Summary Judgment (ECF No. 19) be granted and that this case be dismissed with prejudice.

**II.  REPORT**

Plaintiff Omari H. Patton ("Plaintiff") commenced this prisoner civil rights action on December 3, 2012. In his Amended Complaint, he alleges that he was transferred from the Federal Correctional Institution in Loretto, Pennsylvania ("FCI-Loretto") in retaliation for filing grievances against officers and for having a phone conversation with one of the officer's sisters.[1] Defendants are Robert Werlinger, former Warden, FCI-Loretto, and Bryce Burget, Case Manager Coordinator, FCI Loretto. Plaintiff has sued them both in their individual as well as their official capacities. *See* Plaintiff's Amend. Comp., ECF No. 12.

---

[1] Plaintiff is now housed at FCI-McKean in Bradford, Pennsylvania.

1

### A. Background Information

On June 30, 2005, Plaintiff was sentenced in the United States District Court for the Western District of Pennsylvania to a 360-month term of imprisonment, to be followed by a five-year term of supervised release for various drug offenses. (Def. Exh. 2(a), ECF No. 20-13) Assuming he receives all good conduct time available to him, his projected release date is August 26, 2028.

#### 1. Three Incident Reports in April, 2009

Defendants' exhibits indicate that Plaintiff was issued an Incident Report (#1855428) on April 10, 2009, charging him with Being Insolent to a Staff Member, in violation of Code 312. (Def. Exh. 1(f), ECF No. 20-7.) After a hearing, the Unit Discipline Committee ("UDC") upheld the charge and sanctioned him to 60 days loss of telephone and commissary privileges. *Id*.

Plaintiff was issued another Incident Report (#1855621) on the same day, also charging him with Being Insolent to a Staff Member, in violation of Code 312. *Id*. Plaintiff admitted that the report was true and the UDC sanctioned him to 13 days loss of good conduct time, 15 days disciplinary segregation, 90 days loss of commissary, and recommended a disciplinary transfer. *Id*.

Finally, Plaintiff was issued an Incident Report (#1856560) on April 13, 2009, charging him with Lying or Falsifying a Statement, in violation of Code 313. *Id*. Following a hearing, the UDC upheld the charge and sanctioned him to 60 days loss of commissary and telephone privileges, suspended pending 60 days clear conduct. *Id*.

#### 2. Administrative Remedy Request for Transfer

On July 14, 2009, Plaintiff filed a Request for Administrative Remedy with the Warden at FCI-Loretto. (Def. Exh. 1(g), ECF No. 20-8 at pp.2-3.) He complained that he was having a

difficult time adjusting to FCI-Loretto and requested a transfer due to an unspecified hardship. *Id*. He also claimed that staff were retaliating against him. *Id*.

In a response dated July 31, 2009, the Warden denied Plaintiff's request, explaining that Plaintiff arrived at FCI-Loretto on December 4, 2008, as a lesser security transfer from the Federal Correctional Institution in Cumberland, Maryland. *Id*. at p.4. The Warden further explained that, since Plaintiff's transfer to FCI-Loretto, he received three moderate severity Incident Reports and, as a result, he was a 16-point medium security level inmate with a low management severity level variable. *Id*. Because the lesser security management variable was applied to his case on May 26, 2009, it was explained that his designation to FCI-Loretto was appropriate. *Id*.

Plaintiff appealed the Warden's response requesting that he be moved to a more secure facility. *Id*. at pp.5-6. He stated that he was not adjusting well to the low security, open dormitory setting, which caused him to be paranoid, and that the setting made it difficult for him to sleep, which caused him to be "dysfunctional" during the day. *Id*. He alleged that staff were retaliating against him for filing grievances and that they viewed administrative remedy requests as a "joke." *Id*. He further alleged that staff retaliated against him by changing his management variable, which prohibited his transfer to another facility. *Id*.

Plaintiff's appeal was denied on September 10, 2009. *Id*. at p.7. It was explained that the Bureau of Prisons ("BOP") custody classification policy permits staff to use professional judgment within specific guidelines when making classification decisions. *Id*. One of the objectives of the system is to place each inmate in the lowest security level facility for which the inmate qualifies, normally within 500 miles of the inmate's release residence, while maintaining population balance throughout the federal prison system. *Id*. Plaintiff was advised that a lesser

security management variable was applied to his case after his three disciplinary infractions so he could remain at FCI-Loretto. *Id*. It was explained that although Plaintiff complained he was experiencing adjustment issues, a low security level institution was appropriately applied in compliance with policy, and he was appropriately designated to FCI-Loretto. *Id*. It was noted that he provided no evidence of retaliation by staff against him, and that he was not eligible for transfer consideration at that time. *Id*. Plaintiff was advised that he could appeal to the BOP Central Office within 30 calendar days, but he did not do so. *Id*.

### 3. Fourth Incident Report and Subsequent Transfer

On September 10, 2010, Plaintiff was issued an Incident Report charging him with Fighting with Another Person, in violation of Code 201. (Def. Ex. 1(f), ECF No. 20-7.) Plaintiff admitted that the report was true and the Disciplinary Hearing Officer sanctioned him to 27 days loss of good conduct time, 30 days disciplinary segregation, and 180 days loss of visiting privileges. *Id*.

On December 10, 2010, FCI-Loretto submitted a request to have Plaintiff transferred from FCI-Loretto to any appropriate low or medium level facility outside the Northeast Region for adjustment purposes. (Def. Exh. 2(b), ECF No. 20-14.) The transfer request form reflected that Plaintiff was placed in the SHU at FCI-Loretto on December 8, 2010, pending an investigation involving staff conflict. *Id*. The form stated, "Because this investigation involves staff, details are limited. However it is our recommendation this inmate be transferred to a low or medium level facility outside the Northeast Region." *Id*.

On December 17, 2010, the Designations and Sentence Computations Committee approved Plaintiff for an adjustment transfer from FCI-Loretto to the Federal Correctional Institution in Bennettsville, South Carolina ("FCI-Bennettsville"). (Def. Ex. 1(d), ECF No. 20-

5.) Plaintiff was transferred to FCI-Bennettsville on January 7, 2011, and arrived at the facility on March 10, 2011. (Def. Ex. 1(c), ECF No. 20-4.) Plaintiff was subsequently transferred to the Federal Correctional Institution in Coleman, Florida ("FCI-Coleman") on January 26, 2012, and arrived at that facility on February 2, 2012. *Id*.

### 4. Administrative Tort Claim Filing

On June 18, 2012, Plaintiff filed an administrative tort claim with the BOP Northeast Regional Office, in which he alleged that he was transferred from FCI-Loretto and out of the Northeast region in violation of his constitutional rights. (Def. Exh. 1(h), ECF No. 20-9.) Specifically, he alleged that the transfer was based upon inaccurate information which reflected a minor history of escapes and a minor history of violence over ten years prior. *Id*. He also alleged that his privacy rights were violated because the information used to support the transfer request was inaccurate and that the transfer violated his due process rights because he did not have the opportunity to prove the information relied upon to support that the transfer was inaccurate. *Id*. Plaintiff further argued that Defendant Werlinger did not list a conflict involving a staff member in his records, and suggested that the transfer request was made in retaliation for Plaintiff's past filing of administrative remedies. *Id*. He complained that staff in the SHU at FCI-Loretto did not explain to him why he was being transferred, and he was not given a copy of the transfer request form. *Id*. As relief, he requested $50,000 for unspecified personal injuries. *Id*.

Plaintiff's administrative tort claim was denied by letter dated October 18, 2012. (Def. Exh. 1(i), ECF No. 20-10.) The letter explained that the denial was based on Plaintiff's failure to state a claim actionable under the Federal Tort Claims Act. *Id*. It also explained that Plaintiff failed to provide a description of his actual injuries caused by the incident alleged in his tort

claim. *Id*. Plaintiff was advised that if he was dissatisfied with the decision, he could bring an action against the United States in an appropriate United States District Court within six months of the date of the letter. *Id*.

### 5. Plaintiff's Allegations

Plaintiff alleges that on or about December 10, 2010, he was placed in the SHU at FCI-Loretto, pursuant to a Captain's Review. *See generally*, ECF No. 12. He alleges that he was advised by the investigating Lieutenant that he was placed in the SHU because of a telephone call he made to the sister of an officer at FCI-Loretto. *Id*. According to Plaintiff, the Lieutenant became verbally abusive, said that he would report Plaintiff's contact to the Warden and his Case Manager, and threatened to have Plaintiff transferred to a penal institution outside of the Northeast Region. *Id*. He also alleges that, while he was in the SHU at FCI-Loretto, he was told by Warden Werlinger that he was going to be transferred from FCI-Loretto because he filed grievances against staff. *Id*. He alleges that after he was transferred from FCI-Loretto, he obtained a copy of the transfer request form, which was signed by Case Manager Coordinator Bryce Burget, and he maintains that the transfer request form demonstrates that the transfer was done in retaliation. *Id*. He alleges that his Constitutional rights were violated because he was unfairly transferred to an institution that is far from his family and friends. *Id*.

### B. Standard of Review

Defendants have filed a Motion to Dismiss or, in the alternative, Motion for Summary Judgment. They move to dismiss the amended complaint for lack of subject matter jurisdiction and for failure to state a claim. They also move for summary judgment because Plaintiff failed to exhaust his administrative remedies prior to filing this lawsuit.

### 1. Lack of Subject Matter Jurisdiction

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) challenges the existence of a federal court's subject matter jurisdiction. "When subject matter jurisdiction is challenged under Rule 12(b)(1), the plaintiff must bear the burden of persuasion." Symczyk v. Genesis HealthCare Corp., 656 F.3d 189, 191 n.4 (3d Cir. 2011) (citing Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1409 (3d Cir. 1991)). In considering a Rule 12(b)(1) motion, "the district court may not presume the truthfulness of plaintiff's allegations, but rather must 'evaluat[e] for itself the merits of [the] jurisdictional claims.'" Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005) (citing Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977)).

2.  **Failure to State a Claim**

In considering a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss for failure to state a claim, Federal Courts require notice pleading, as opposed to the heightened standard of fact pleading. Fed. R. Civ. P. 8(a)(2) requires only "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds on which it rests.'" Bell Atlantic Corp. v. Twombly, 550 U.S. 554, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).

Building upon the landmark United States Supreme Court decisions in Twombly and Ashcroft v. Iqbal, 556 U.S. 662 (2009), the United States Court of Appeals for the Third Circuit explained that a District Court must undertake the following three steps to determine the sufficiency of a complaint:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Third, "whe[n] there are well-pleaded factual allegations, a court should assume their

7

veracity and then determine whether they plausibly give rise to an entitlement for relief." This means that our inquiry is normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the Complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the Complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged.

Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011) (quoting Iqbal, 556 U.S. at 675, 679).

The third step of the sequential evaluation requires this Court to consider the specific nature of the claims presented and to determine whether the facts pled to substantiate the claims are sufficient to show a "plausible claim for relief." Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009). "While legal conclusions can provide the framework of a Complaint, they must be supported by factual allegations." Id. at 210-11; *see also* Malleus, 641 F.3d at 560.

This Court may not dismiss a Complaint merely because it appears unlikely or improbable that Plaintiff can prove the facts alleged or will ultimately prevail on the merits. Twombly, 550 U.S. at 563 n.8. Instead, this Court must ask whether the facts alleged raise a reasonable expectation that discovery will reveal evidence of the necessary elements. Id. at 556. Generally speaking, a Complaint that provides adequate facts to establish "how, when, and where" will survive a Motion to Dismiss. Fowler, 578 F.3d at 212; *see also* Guirguis v. Movers Specialty Servs., Inc., 346 F. App'x. 774, 776 (3d Cir. 2009). In short, a Motion to Dismiss should not be granted if a party alleges facts, which could, if established at trial, entitle him/her to relief. Twombly, 550 U.S. at 563 n.8.

Finally, a court must employ less stringent standards when considering *pro se* pleadings than when judging the work product of an attorney. Haines v. Kerner, 404 U.S. 519, 520 (1972). When presented with a *pro se* complaint, the court should construe the complaint liberally and draw fair inferences from what is not alleged as well as from what is alleged. Dluhos v.

8

Strasberg, 321 F.3d 365, 369 (3d Cir. 2003). In a section 1983 action, the court must "apply the applicable law, irrespective of whether the *pro se* litigant has mentioned it by name." Higgins v. Beyer, 293 F.3d 683, 688 (3d Cir. 2002) (quoting Holley v. Dep't of Veteran Affairs, 165 F.3d 244, 247-48 (3d Cir. 1999)). *See also* Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996) ("Since this is a § 1983 action, the [pro se] plaintiffs are entitled to relief if their complaint sufficiently alleges deprivation of any right secured by the Constitution.") (quoting Higgins, 293 F.3d at 688). Notwithstanding this liberality, *pro se* litigants are not relieved of their obligation to allege sufficient facts to support a cognizable legal claim. *See*, *e.g.*, Taylor v. Books A Million, Inc., 296 F.3d 376, 378 (5th Cir. 2002); Riddle v. Mondragon, 83 F.3d 1197, 2102 (10th Cir. 1996).

### 3. Summary Judgment

Summary judgment is appropriate if, drawing all inferences in favor of the non-moving party, the record indicates that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment may be granted against a party who fails to adduce facts sufficient to establish the existence of any element to that party's case and for which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317 (1986). The moving party bears the initial burden of identifying evidence or the lack thereof that demonstrates the absence of a genuine issue of material fact. National State Bank v. Federal Reserve Bank of New York, 979 F.2d 1579, 1582 (3d Cir. 1992). Once that burden has been met, the non-moving party must set forth "specific facts showing that there is a genuine issue for trial" or the factual record will be taken as presented by the moving party and judgment will be entered as a matter of law. Matsushita Elec. Ind. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). An issue is genuine only if the evidence is such that a reasonable jury could return a verdict for the non-moving party.

Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). The inquiry, then, involves determining "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Brown v. Grabowski, 922 F.2d 1097, 1111 (3d Cir. 1990) (quoting Anderson, 477 U.S. at 251-52). If a court, having reviewed the evidence with this standard in mind, concludes that "the evidence is merely colorable . . . or is not significantly probative," then summary judgment may be granted. Anderson, 477 U.S. at 249-50. Finally, while any evidence used to support a motion for summary judgment must be admissible, it is not necessary for it to be in admissible form. *See* Fed. R. Civ. P. 56(c); Celotex, 477 U.S. at 324; J.F. Feeser, Inc., v. Serv-A-Portion, Inc., 909 F.2d 1524, 1542 (3d Cir. 1990).

**C.     Discussion**

Plaintiff's claims are brought pursuant to Bivens v. Six Unknown Federal Agents, 403 U.S. 388 (1971), wherein the United States Supreme Court implied a right of action directly under the Fourth Amendment to the United States Constitution to allow a victim of an unconstitutional search to sue federal officials personally for damages. "'Bivens established that the victims of a constitutional violation by a federal agent have a right to recover damages against the official in federal court despite the absence of any statute conferring such a right.'" Hartman v. Moore, 547 U.S. 250, 255 n.2 (2006) (quoting Carlson v. Green, 446 U.S. 14, 19 (1980)). The United States Supreme Court's "authority to imply a new constitutional tort, not expressly authorized by statute, is anchored in [its] general jurisdiction to decide all cases 'arising under the Constitution, laws, or treaties of the United States.'" Correctional Servs. Corp. v. Malesko, 534 U.S. 61, 66 (2001) (quoting 28 U.S.C. § 1331). In order to state a Bivens claim, a plaintiff must allege the following: 1) defendants must have been acting under color of federal

law; and 2) defendants must have caused the plaintiff to be deprived of a right secured by the Constitution and laws of the United States. Id.

### 1. Failure to Exhaust Administrative Remedies

Defendants first argue that Plaintiff failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e. The PLRA provides, in pertinent part, that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion is required under this provision regardless of the type of relief sought and the type of relief available through administrative procedures. *See* Booth v. Churner, 532 U.S. 731, 741 (2001). In addition, the exhaustion requirement applies to all claims relating to prison life which do not implicate the duration of the prisoner's sentence, including those that involve general circumstances as well as particular episodes. *See* Porter v. Nussle, 524 U.S. 516, 532 (2002).

The PLRA also mandates that inmates "properly" exhaust administrative remedies before filing suit in federal court. Woodford v. Ngo, 548 U.S. 81, 93 (2006). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjunctive system can function effectively without imposing some orderly structure on the course of its proceedings." Id. at 90-91. Importantly, the exhaustion requirement may not be satisfied "by filing an untimely or otherwise procedurally defective . . . appeal." Id. at 83; *see also* Spruill v. Gillis, 372 F.3d 218, 228-29 (3d Cir. 2004) (utilizing a procedural default analysis to reach the same conclusion). Courts have concluded that inmates who fail to fully, or timely, complete the prison grievance process are barred from subsequently litigating claims in federal

courts. *See*, *e.g.*, Booth v. Churner, 206 F.3d 289 (3d Cir. 2000); Bolla v. Strickland, 304 F. App'x 22 (3d Cir. 2008); Jetter v. Beard, 183 F. App'x 178 (3d Cir. 2006).

The administrative remedy procedure for federal prisoners are set forth at 28 C.F.R. §§ 542.10 *et seq*. The BOP's administrative remedy procedure provides formal review of any complaint which relates to any aspect of the inmate's confinement. Under this process, inmates must first attempt informal resolution of their complaints under procedures set forth by the Warden at the institution where the origin of the complaint occurred. 28 C.F.R. § 542.13. If informal resolution is insufficient to resolve the matter, the inmate may file a formal complaint with the Warden within twenty days of the date on which the basis of the complaint occurred. 28 C.F.R. § 542.14(a). If the inmate is not satisfied with the Warden's response, he or she may appeal the response to the Regional Director. 28 C.F.R. § 542.15(a). If the inmate is dissatisfied with the Regional Director's response, he or she may file an appeal to the Office of General Counsel of the BOP within thirty days from the date of the Regional Director's response. 28 C.F.R. § 542.15(a). Appeal to the Office of General Counsel is the final administrative appeal in the BOP. 28 C.F.R. § 542.15(a).

In this case, Plaintiff did not challenge his transfer through the BOP's administrative remedy procedure. (Def. Exh. 1, ECF No. 20-1.) In fact, Plaintiff never filed a formal complaint challenging his transfer at all; although, he did raise the issue in an administrative tort claim which was denied on October 18, 2012, for failure to state a claim actionable under the Federal Tort Claims Act. However, "[t]he filing on an administrative tort claim by a prisoner does not excuse the prisoner's failure to meet the separate exhaustion requirements for a Bivens claim under the PLRA." Vega v. United States Dep't of Justice, No. 1:cv-04-2398, 2005 U.S. Dist. LEXIS 29740, 2005 WL 2931841, at *8 (M.D. Pa. Nov. 4, 2005) (citing Nwaokocha v.

Sadowski, 369 F. Supp. 2d 362, 368 (E.D.N.Y. 2005) (citing Owusu v. Fed. Bureau of Prisons, No. 02-0915, 2003 U.S. Dist. LEXIS 162, 2003 WL 68031, at *2 (S.D.N.Y. Jan. 7, 2003); Hylton v. Fed. Bureau of Prisons, No. 00-5747, 2002 U.S. Dist. LEXIS 10713, 2002 WL 720605, at *2 (E.D.N.Y. Mar. 11, 2002)). "The PLRA's mandatory exhaustion requirement is specifically designed to facilitate the resolution of federal prisoner claims internally without resorting to the courts, while the FTCA's administrative exhaustion requirements permit a prisoner to skip over the truly 'internal' steps of the PLRA process entirely." Owusu, *supra*, at *6.

Plaintiff argues that challenging his transfer through the BOP's administrative remedy process would have been futile and that in any respect he was transferred before he could have pursued his administrative remedies at FCI-Loretto. Not only does the PLRA's exhaustion requirement preclude a futility exception, Nyhuis v. Reno, 204 F.3d 65, 71 (3d Cir. 2000), but Plaintiff could have pursued his administrative remedies once he arrived at FCI-Bennettsville. Plaintiff did not do so, and, although irrelevant to the issue of exhaustion, he did not even file his administrative tort claim until June 18, 2012, over a year after his transfer. The record is clear that Plaintiff did not exhaust his administrative remedies and therefore his Bivens claims challenging his transfer must be dismissed. In the alternative, Plaintiff has failed to state a claim upon which relief may be granted and his Amended Complaint should be dismissed for the reasons stated below.

### 2. Retaliation

Plaintiff alleges that his assignment to the SHU and subsequent transfer out of FCI-Loretto was in retaliation for speaking on the phone to one of the officer's sisters and filing

grievances against staff. Defendants argue that Plaintiff has failed to state a *prima facie* claim of retaliation. The undersigned agrees.

It is well settled that retaliation for the exercise of a constitutionally protected right may violate the protections of the First Amendment. Rauser v. Horn, 241 F.3d 330 (3d Cir. 2001); White v. Napoleon, 897 F.2d 103, 112 (3d Cir. 1990). However, merely alleging the fact of retaliation is insufficient; in order to prevail on a retaliation claim, a plaintiff must show three things: (1) the conduct in which he engaged that led to the alleged retaliation was constitutionally protected; (2) he suffered adverse action at the hands of the prison official; and (3) the protected activity was a substantial motivating factor in the prison official's decision to take the adverse action. *See* Mt. Healthy City Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977); Anderson v. Davila, 125 F.3d 148, 163 (3d Cir. 1997).

A plaintiff can satisfy the second requirement by demonstrating that the "adverse" action "was sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights." *See* Allah v. Seiverling, 229 F.3d 220, 225 (3d Cir. 2000). The third factor, "motivation," may be established by alleging a chronology of events from which retaliation plausibly may be inferred. Tighe v. Wall, 100 F.3d 41, 42 (5th Cir. 1996); Goff v. Burton, 91 F.3d 1188 (8th Cir. 1996); Pride v. Peters, 72 F.3d 132 (Table), 1995 WL 746190 (7th Cir. 1995). If the plaintiff proves these three elements, the burden shifts to the state actor to prove that it would have taken the same action without the unconstitutional factors. Mt. Healthy, 429 U.S. at 287. "This means that, once a prisoner demonstrates that his exercise of a constitutional right was a substantial or motivating factor in the challenged decision, the prison officials may still prevail by proving that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest." Rauser, 241 F.3d at 334.

Assuming Plaintiff has sufficiently pled the first two prongs of a retaliation claim in connection with his transfer,[2] he fails on the crucial third prong. Plaintiff's allegations do not lead the Court to draw a reasonable inference that there was a causal link between his filing of grievances and subsequent transfer.

The Third Circuit has explained that, to establish causation, "a plaintiff usually must prove either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link." Lauren W. ex rel. Jean W. v. DeFlaminis, 480 F.3d 259, 267 (3d Cir. 2007) (internal citations omitted). The mere fact that an adverse action occurs after a complaint or grievance is filed is relevant, but not dispositive, for the purpose of establishing a causal link between the two events. *See* Lape v. Pennsylvania, 157 F. App'x. 491, 498 (3d Cir. 2005). In this case, however, there is no temporal proximity to suggest that the two events are related. The only grievances Plaintiff filed against staff were filed between February 2, 2009, and April 3, 2009. There were a total of three grievances during this period; one Plaintiff withdrew, another was rejected because he did not first attempt to informally resolve the issue, and the third was responded to and closed on April 22, 2009. (Def. Ex. 1b, ECF No. 20-3 at pp.4-6.) Plaintiff's next grievance was submitted on July 14, 2009; but, ironically, in that grievance he requested a

---

[2] It is doubtful that Plaintiff engaged in any kind of protected conduct when he spoke to the officer's sister on the telephone since a prisoner has no right to the unlimited use of a telephone in prison. Almahdi v. Ashcroft, 310 F. App'x 519, 522 (3d Cir. 2009). However, Defendants do not dispute that a prisoner's ability to file grievances and lawsuits against prison officials is a protected activity for purposes of a retaliation claim. *See* Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003); Allah, 229 F.3d at 224; Milhouse v. Carlson, 652 F.2d 371, 373-74 (3d Cir. 1981) (retaliation for exercising right to petition for redress of grievances states a cause of action for damages arising under the constitution).

Additionally, the Third Circuit Court of Appeals has found that a plaintiff's placement in disciplinary confinement and transfer to another facility are sufficiently adverse actions to support a retaliation claim. *See* Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003) (placement in disciplinary confinement for three months); DeFranco v. Wolfe, 387 F. App'x 147, 157 (3d Cir. 2010) (transfer to another facility). However, in this case Plaintiff was only in the RHU for approximately thirty days before he was transferred from FCI-Loretto.

transfer to a higher security institution. *Id*. at p.7. Plaintiff was not placed in the RHU until December 8, 2010, and not transferred from FCI-Loretto until January 7, 2011, a year and a half after he filed grievances against staff. Plaintiff's allegations simply do not infer causation. Therefore, he has not stated a plausible claim for relief.

### 3. Due Process

It is unclear whether Plaintiff raises a due process claim in his Amended Complaint, but to the extent that he does, he has also failed to state a plausible claim for relief. First, Plaintiff has no protected liberty interest in any security classification or particular place of confinement. *See* Olim v. Wakinekona, 461 U.S. 238, 245 (1983); Meachum v. Fano, 427 U.S. 215, 225 (1976); Montayne v. Haymes, 427 U.S. 236, 242 (1976); Bulger v. U.S. Bureau of Prisons, 65 F.3d 48 (5th Cir. 1995); Marchesani v. McCune, 531 F.2d 459 (10th Cir.), *cert*. *denied*, 429 U.S. 846 (1976). Simply put, as a legal matter, Plaintiff has no constitutional right to choose his prison or to remain free from disciplinary confinement.

Second, Plaintiff's one month long disciplinary confinement period did not impact a constitutionally protected liberty interest for which he was entitled to due process protections. Courts within this Circuit and the State of Pennsylvania, applying the standard announced in Sandin v. Conner, 515 U.S. 472 (1995),[3] have found no protected liberty interest implicated by

---

[3] In this regard, the Supreme Court has held that prison conditions deprive a prisoner of a state created liberty interest that is protected by due process guarantees when they result in "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 483 (1995). Applying this test, the Supreme Court concluded that the prisoner in Sandin did not have a protected liberty interest in remaining free of disciplinary detention or segregation because his thirty-day disciplinary detention, though punitive, did not present a dramatic departure from the basic conditions of his sentence. In making this determination, the Supreme Court looked at two basic factors: (1) the amount of time the prisoner was placed into disciplinary segregation; and (2) whether the conditions of his confinement in disciplinary segregation were significantly more restrictive. After reviewing these two factors, the Supreme Court concluded that thirty days in disciplinary detention, which was similar in many respects to administrative custody, did not present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest.

16

placement in disciplinary custody for longer amounts of time. *See* Smith v. Mensinger, 293 F.3d 641, 652 (3d Cir. 2003) (Seven months disciplinary confinement did not implicate liberty interest); Griffin v. Vaughn, 112 F. 3d 703, 708 (3d Cir. 1997) (Finding that fifteen months in administrative custody did not deprive plaintiff of a liberty interest and thus he was not entitled to procedural due process protection.); Young v. Beard, 227 F. App'x 138, 141 (3d Cir. 2007) (holding that absent allegations showing that conditions in disciplinary confinement for 930 days imposed atypical and significant hardship on an inmate in relation to ordinary incidents of prison life, the inmate was not entitled to procedural protections required by due process during prison disciplinary proceedings); Abney v. Walker, No. 2:06cv1248, 2007 U.S. Dist. LEXIS 36166, 2007 WL 1454265, at *3 (W.D. Pa. May 17, 2007) (adopting Report and Recommendation finding that 75 days in the RHU did not trigger due process protections); Brown v. Blaine, 833 A.2d 1166, 1172 (Pa. Commw. Ct. 2003) (Four months in the long term segregation unit was not an "atypical and significant hardship."). Plaintiff's allegations do not support an entitlement to procedural due process protections with regard to his placement in the RHU. As such, his claim is subject to dismissal.

    **4.    Verbal Harassment**

To the extent Plaintiff makes a claim that the verbal harassment and threats he was allegedly subjected to violated his rights under the United States Constitution, he has also failed to state such a claim. It is well settled that allegations of threats and verbal harassment, without injury or damage, do not state a Constitutional claim. *See* McBride v. Deer, 240 F.3d 1287, 1291 n.3 (10th Cir. 2001); DeWalt v. Carter, 224 F.3d 607, 612 (7th Cir. 2000); Boddie v. Schnieder, 105 F.3d 857, 861 (2d Cir. 1997); *see also* Ramirez v. Holmes, 921 F. Supp. 204, 210 (S.D.N.Y.

1996). Even to the extent that Plaintiff was caused fear or emotional anxiety, these allegations fail to state a claim.

### 5. Sovereign Immunity

Defendants argue that the claims against them in their official capacities are barred by the doctrine of sovereign immunity. In the caption of his Amended Complaint, Plaintiff clearly indicates that the individual Defendants are being sued in both their individual and official capacities. Suits against officers in their official capacities are suits against the entity of which an officer is an agent. Kentucky v. Graham, 473 U.S. 159, 165-66 (1985). Defendants are agents of the BOP. Therefore, suits against them in their official capacities are suits against the BOP.

"It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction." United States v. Mitchell, 463 U.S. 206, 212 (1983). The federal government may waive its sovereign immunity by statute, but that waiver must be unequivocally expressed in statutory text and will not be implied. United States v. Nordic Village, Inc., 503 U.S. 30, 33-34, 37 (1992). Moreover, any waiver of sovereign immunity will be strictly construed in favor of the sovereign. Lane v. Pena, 518 U.S. 187, 192 (1996).

In F.D.I.C. v. Meyer, 510 U.S. 471, 477-78 (1994), the Court ruled that while Bivens allows for a cause of action for damages against federal officials for certain constitutional violations, it does not waive sovereign immunity against federal agencies. *Accord* Corr. Servs. Corp. v. Malesko, 534 U.S. 61, 72 (2001) ("The prisoner may not bring a Bivens claim against the officer's employer, the United States, or the BOP.") Because Bivens does not waive the sovereign immunity of the federal government, the BOP is not a proper party in a Bivens action.

*Accord* Banks v. Robers, 251 F. App'x 774 (3d Cir. 2007). Accordingly, Plaintiff's Bivens claims only extend to the individual Defendants in their individual capacities and not to the BOP itself nor to the Defendants in their official capacities.

**6. Qualified Immunity**

Finally, Defendants argue that they are entitled to qualified immunity. Given that their motion should be granted on the foregoing grounds, a discussion on this issue is not necessary.

**III. CONCLUSION**

For the foregoing reasons, it is respectfully recommended that Defendants' Motion to Dismiss or, in the alternative, Motion for Summary Judgment (ECF No. 19) be granted and that this case be dismissed with prejudice.

In accordance with the Magistrate Judge's Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Local Rule of Court 72.D.2, the parties are allowed fourteen (14) days from the date of service to file objections to this Report and Recommendation. Any party opposing the objections shall have fourteen (14) days from the date of service of objections to respond thereto. Failure to file timely objections will constitute a waiver of any appellate rights.

Dated: January 24, 2014.

/s/ Lisa Pupo Lenihan
Lisa Pupo Lenihan
Chief United States Magistrate Judge

cc: Omari H. Patton
 07410-068
 FCI McKean
 PO Box 8000
 Bradford, PA 16701
 *Via First Class Mail*

19

Counsel of Record
*Via ECF Electronic Mail*